RECEIVED CLERK

MAR 2 0 2020

U.S. DISTRICT COURT

**DAVID J. HOLDSWORTH (4052)**
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT 84070
Telephone (801) 352-7701
Facsimile (801) 567-9960

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| MIKE RODGERS, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| EMPLOYER SOLUTIONS GROUP, | : | Case: 2:20-cv-00188 |
| SOLUTIONS STAFFING GROUP, | : | Assigned To : Benson, Dee |
| INC., and JOHN DOES I-V, | : | Assign. Date : 3/20/2020 |
| | : | Description: Rodgers v. Employer |
| Defendants. | : | Solutions Group et al |

Mike Rodgers, Plaintiff herein, complains of Employer Solutions Group,

(hereinafter "ESG"), Solutions Staffing Group, Inc. ("SSG"), and John Does I-V,

Defendants herein, demands trial by jury and as and for causes of action against

Defendants, alleges as follows:

**PARTIES**

1.     Plaintiff Mike Rodgers (hereinafter referred to as "Mr. Rodgers")

is an individual who resides in the State of Utah.

2.      On information and belief, Defendant Employer Solutions Group (hereinafter "ESG"), is an entity doing business in the State of Utah, with a principal place of business in the State of Utah at 4844 North 300 West, Suite 100, Provo, Utah, 84604, and a registered agent in the State of Utah at _____, upon whom civil process may be served.

3.      On information and belief, Defendant Solutions Staffing Group, Inc. (hereinafter "SSG"), is an entity doing business in the State of Utah, and is a subsidiary of or a company affiliated with or related to ESG.

4.      Plaintiff alleges that, at all times relevant herein, SSG employed him as an employee.

5.      John Does I-V are individuals.  On information and belief, Plaintiff alleges John Does I-V are the owner and/or officers of ESG.

6.      Plaintiff alleges that, at all times relevant herein during his employment with SSG, John Does I-V, exercised operational control over SSG and, at all times relevant herein, acted directly and indirectly in the interest of SSG in regards to Plaintiff's employment.

7.      Accordingly, Plaintiff alleges that each of John Does I-V acted as an "employer" in regards to Plaintiff within the meaning of the Fair Labor Standards Act ("FLSA") and each is subject to personal liability to Plaintiff under the FLSA.

## JURISDICTION AND VENUE

8.      Plaintiff alleges that during his employment with ESG and SSG

and John Does I-V violated his rights under the federal Fair Labor Standards Act of

1938, 29 U.S.C. §201, et. seq., in that his work responsibilities, duties and assignments

required him to work over 40 hours a week on a regular basis, but SSG did not pay him

wages at the overtime rate or even at his regular rate for the hours over 40 hours a

week which he worked.  Thus, Plaintiff brings this action to recover earned but unpaid

overtime compensation, liquidated damages, attorney's fees and costs, and other

appropriate relief under the provisions of the federal Fair Labor Standards Act of 1938,

as amended, 29 U.S.C. § 201, et. seq. (hereinafter referred to as "FLSA".)  Jurisdiction

is proper under 28 U.S.C. § 1331 (federal question).  Venue is proper under 28 U.S.C.

§ 1391 because the Defendants reside in the federal district of Utah, or otherwise may

be found within the federal district of Utah, the causes of action alleged herein

occurred within the federal district of Utah, and the records relating to Mr. Rodgers'

employment with SSG are expected to exist within the federal district of Utah.

## STATEMENT OF FACTS

9.      On information and belief, Plaintiff alleges that at all times

material hereto, SSG was an "enterprise engaged in commerce" as that term is defined

in 29 U.S.C. § 203 and, therefore, or otherwise, subject to the FLSA.

3

10.     Mr. Rodgers is a recruiter by occupation.

11.     In approximately May 2016, Mr. Rodgers began working for SSG.

12.     SSG assigned Mr. Rodgers to work at the LDS Church Office Building in Riverton, Utah.  SSG brought him on to help out with recruiting primarily for jobs in information technology ("I.T.") for the LDS Church.

13.     Mr. Rodgers was responsible for filling all information technology positions in the Riverton, Utah, office.

14.     When Mr. Rodgers was hired, he was told to work as many hours as necessary to do his job.  As Mr. Rodgers settled into his job, he came to discover that, to do his job and to achieve a satisfactory level of performance, he would need to work many hours over the typical 40-hours per week per work week.

15.     As Mr. Rodgers continued to do his job, he came to realize that at least two factors were contributing to his high workload and need to work over 40 hours a week.

a.     The positions that he had the responsibility to fill numbered in the hundreds;

b.     The LDS Church (as many employers) was transitioning away from hiring full-time employees to hiring contract/contingent workers. This factor increased turnover (as such workers sought more long-term,

4

benefitted positions elsewhere), which translated into more positions to fill and more workload.

16.    Mr. Rodgers kept track of the time and hours he worked by means of an online timekeeping system called SwipeClock. At the present time, Mr. Rodgers is not exactly sure how SwipeClock worked — that is, whether it was a timekeeping system for the LDS Church or SSG, or some combination of the above.

17.    In approximately July 2016, Mr. Rodgers' Director, Don Gallup, told Mr. Rodgers' boss, Sean McKehn, to not allow any of his employees work overtime hours and to inform his employees that, if they did work overtime hours, they would not get paid for such hours. (Don and Sean were employees of the LDS Church, not SSG, but supervised Mr. Rodgers and the other two recruiters on his team.) An employer's directive to employees to not work overtime is not in violation of the FLSA. However, Mr. Rodgers alleges that a directive to not pay overtime compensation to employees who work overtime hours is in violation of the FLSA.

18.    For a time, Mr. Rodgers worked with two other recruiters. Mr. Rodgers' situation was somewhat different than his peers, however, in that the other two recruiters had substantially less workload than Mr. Rodgers.

19.    In any event, the particular nature of his job and the circumstances put Mr. Rodgers in the position which many non-exempt white collar employees find

5

themselves in — needing to manage a huge workload with the direction to do whatever it takes (work as many hours as necessary) to get the job done, but don't work any overtime hours because of facing the risk of not getting paid for such hours. Nevertheless, soon after starting the job, Mr. Rodgers was working two to three hours per day past eight hours per day, totaling about 50 hours a week (about ten hours of overtime per week).

20.     As Mr. Rodgers struggled to balance these two diametrically opposed directives, in approximately October/November 2016, his management informed him that he could work up to 10 hours of overtime per week (and that he would get paid overtime compensation for any of such overtime hours).

21.     From October 2016 to October 2017, he worked roughly the same schedule he had been working before October 2016, averaging about 10 hours of overtime per week.  He was paid for most of his overtime hours during this approximately 12-month period.

22.     Apparently, in approximately October/November 2017, Mr. Rodgers' management rescinded the express permission to work overtime hours and to get paid for working overtime hours that it had previously issued to Mr. Rodgers.

23.     However, after October/November 2017, Mr. Rodgers' job responsibilities and workload did not decrease.  Faced with the pressure to do his job

6

and to perform to his own satisfaction and satisfy his productivity objectives, he continued to work about the same number of hours per week that he had been working previously — he continued to average working about 10 hours of overtime a week.

24.     Thus, after approximately October/November 2017, management was requiring Mr. Rodgers to handle the same level of work and to meet the same level of production, but not officially allowing him to work overtime. Yet, Mr. Rodgers was working overtime hours because the job required him to work that many hours to meet his job requirements.

25.     As Mr. Rodgers struggled to comply with these contradictory imperatives, he stopped reporting the true times he was working because he was fearful that, if he reported the actual hours it was taking to work his workload, management would fire him. Mr. Rodgers did tell Sean that he was working the same number of hours as he had historically been working, but just not putting the additional time into the timekeeping system. But he described in his notes in his computer records what he was doing. Thus, after October/November 2017, Mr. Rodgers continued his past practice of working approximately 10 hours of overtime per week (but now not getting paid for such overtime hours).

26.     After November 1, 2017, Mr. Rodgers continued to work overtime hours and earn overtime compensation which SSG did not pay him.

27.   Mr. Rodgers worked at the mercy of the contract between the LDS Church and SSG. At some point, the two parties to that contract extended the contract through the end of June 2018.

28.   As Mr. Rodgers was nearing the end of the contract, a dispute arose regarding Mr. Rodgers' use of paid time off ("PTO") and payment for his earned and accrued but unused PTO.

29.   This dispute generated some e-mail and in-person conversations between Mr. Rodgers and various Human Resources personnel and other managers with ESG and SSG. During such conversations, Mr. Rodgers raised the issue of his having worked overtime hours after the October 2017 change, but not getting paid for the overtime hours he had worked after the October 2017 change. This notice to ESG raised some concerns and generated an effort by ESG to control the damage and potential liability. Mr. Rodgers alleges that effort took several forms and constitutes retaliation prohibited by the FLSA:

a.   On information and belief, Mr. Rodgers alleges eliminating Mr. Rodgers' ability to access his e-mail account and notes, by which he could prove when and how much he had been working; and

b.   On information and belief, some effort by Sharron Ngatikaura to change (reduce) Mr. Rodgers' hours in SwipeClock. Mr. Rodgers

8

alleges that, when he realized what ESG was doing, he backed up his time in Outlook, the records of which should be in the possession of the LDS Church.

30.    In June 2018, ESG ended Mr. Rodgers' employment.

31.    Mr. Rodgers' hourly rate was $45 per hour. This generates an overtime rate of $67.50 per hour. Given ESG's off, on and then off again treatment of the overtime hours Mr. Rodgers worked, it has been challenging to figure out what overtime hours Mr. Rodgers may have worked, but for which he has not been paid.

32.    At the present time, Mr. Rodgers' best estimate is that, at a rate of $67.50 x 10 hours per week = $675.00 per week, from November 1, 2017 to April 30, 2018, he earned approximately $675 x 26 weeks = $17,550.00 in overtime compensation. Mr. Rodgers alleges that, although SSG may have paid him for some of the overtime hours he worked from October 20o17 to April 2018, it has not paid him for all of the hours he worked during that period.

33.    Mr. Rodgers hereby makes a claim for such amount or whatever amount his actual overtime hours worked during that time generate in terms of overtime compensation for which SSG has not paid him.

34.    Furthermore, given the fact that Mr. Rodgers' e-mail of July 25, 2018 to ESG and a letter sent by his attorney to ESG, dated June 18, 2019, may be considered as a written demand for payment, he also has a claim for reasonable

9

attorney's fees under Utah Code Annotated § 34-27-1 (as well as the attorney's fees provision of the FLSA).

35.     Regarding the issue of potential offsets, ESG may assert that it overpaid Mr. Rodgers more than he earned or was entitled to receive in sick hours, holiday hours and vacation.  Mr. Rodgers disputes this, but even if these alleged overpayments were used as offsets, Mr. Rodgers alleges SSG would still owe Mr. Rodgers a substantial amount of money for earned but unpaid overtime compensation.

36.     As and for causes of action against the Defendants, Plaintiff alleges as follows:

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

37.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 36 above as if alleged in full herein.

38.     Defendants had an arrangement with Plaintiff to pay him for all the hours he worked.

39.     Plaintiff worked the hours of overtime he has alleged above during the period of November 1, 2017 to April 30, 2018.

40.     ESG has failed to pay him all amounts for such overtime hours he worked.

41.     Such failure constitutes a breach of the contract between Mr.

Rodgers and Defendants.

42.     Such breach has caused Plaintiff loss, injury and damage.

43.     Defendants are liable to pay Plaintiff for the time he spent

washing and drying towels.

## SECOND CAUSE OF ACTION
## FAILURE TO PAY OVERTIME WAGES OR THE
## EQUIVALENT OF OVERTIME WAGES FOR
## OVERTIME HOURS WORKED

44.     Plaintiff incorporates by this reference all allegations listed in

paragraphs 1 through 43 above as if alleged in full herein.

45.     From approximately November 1, 2017 to April 30, 2018,

Plaintiff worked approximately 10 or hours or more per work week for SSG.

46.     Plaintiff worked all of such hours for SSG, but Defendants did not

pay Plaintiff and have not paid Plaintiff time and a half overtime wages or the

equivalent of overtime wages (or any wages) for all of such hours worked in excess of

40 hours per work week.

47.     As alleged above, such failures to pay overtime wages or the

equivalent of such overtime wages for such overtime work constitute violations of the

FLSA.

11

48.     Plaintiff estimates the amount owing to him for earned, but unpaid overtime wages or the equivalent of overtime wages from November 1, 2017 to April 30, 2018, based on his rate of pay and the hours in excess of 40 hours per work week he worked, is the sum of approximately $17,550.

49.     At this point in time, Plaintiff cannot allege exact amounts of overtime compensation due him and only allege approximate amounts of overtime compensation due to him, because (a) Defendants may dispute the validity of his records and estimates concerning the number of hours Plaintiff was required, suffered or permitted to work each work week in excess of 40 hours per work week for which he has not been paid overtime wages or the equivalent of overtime wages; (b) other records which may be relevant to his work hours may be in the exclusive possession and control of Defendants or may have been altered or destroyed or no longer exist or never existed; and (c) Defendants may have not kept any records on the time Plaintiff worked after regular work hours.  Plaintiff hereby makes claims under the FLSA for whatever amounts of earned but unpaid overtime wages the facts and evidence as to his overtime work hours and rates of pay dictate.

50.     On information and belief, Plaintiff alleges that the facts dictate the amounts of overtime wages set forth above.

51.     On information and belief, Plaintiff alleges the failure on the part of Defendants to pay Plaintiff overtime wages or the equivalent of overtime wages for all of the hours he worked in excess of 40 hours per work week is intentional, willful, reckless and/or a product of deliberate indifference, entitling Plaintiff to claim up to three years of such earned but unpaid overtime wages and, if he is successful in establishing entitlement to overtime wages or the equivalent of overtime wages, to an award of an additional amount equal to the amount of overtime wages, found due as liquidated damages, under the FLSA, 29 U.S.C. §216.

52.     On information and belief, Plaintiff alleges such violations were willful on the basis of several facts and grounds, including, but not limited to: (1) Defendants knew, or should have known, that they needed to keep their employees' workloads, time-keeping and compensation practices in compliance with the FLSA and other laws and regulations regulating the workplace; and (2) in failing to do so and to pay Plaintiff overtime wages or any wages at all for such work, Defendants showed reckless disregard for the requirements of FLSA and other laws and regulations regulating the workplace; and (3) Defendants are sophisticated employers with hundreds of employees and are or should have been well aware of the need to comply with the FLSA. Thus, Plaintiff alleges that Defendants deliberately required, permitted or suffered Plaintiff to work many hours over 40 hours per work week and required

13

him to perform work after normal business hours and knew he was doing so, and that they had an obligation to pay him wages and overtime wages or the equivalent of overtime wages for such hours he worked in excess of 40 hours per week, but, nevertheless, intentionally, knowingly or recklessly, failed to keep track of his work hours and failed to pay him overtime wages or the equivalent of overtime wages (or any wages at all) for any and all of the hours in excess of 40 hours per work week he worked.

53.     Plaintiff also alleges that (a) in requesting to be paid for the overtime hours he had worked for which he had not been paid, he engaged in protected activity; (b) that, thereafter, Defendant terminated his employment; and (c) that there is a causal connection between his protected activity and the adverse action of termination.

54.     Plaintiff also alleges that, to pursue his claims, he has been required to hire an attorney and, if he prevails, by settlement or otherwise, such attorney will be entitled to reasonable attorney's fees and costs under the FLSA, 29 U.S.C. §216 (b).

### THIRD CAUSE OF ACTION
### ATTORNEY'S FEES

55.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 54 above as if alleged in full herein.

14

56.    In addition to attorney's fees and costs recoverable under the FLSA, Mr. Rodgers makes a claim for reasonable attorney fees and court costs under Utah Code § 34-27-1, in that (a) during his employment with Defendants, he asked Defendants to pay him what he had earned and what it owed him for overtime compensation; (b) he has made a written demand for payment of what he alleges he earned and what Defendants owe him; (c) Defendants have not paid Plaintiff any of such amount; and (d) Mr. Rodgers has waited the requisite period of time before filing the instant civil action.

57.    Accordingly, Mr. Rodgers makes a claim for reasonable attorney's fees and costs under Utah Code § 34-27-1.

### PRAYER FOR RELIEF

WHEREFORE, on Plaintiff's First Cause of Action, Plaintiff prays judgment be entered against Defendant jointly and severally in the amount of $17,550 for damages for breach of contract.

WHEREFORE, on Plaintiff' Second Cause of Action, Plaintiff demands a trial by jury and prays that judgment be entered against Defendants, jointly and severally, together and individually, in the amount of approximately $17, 550 for overtime wages or the equivalent of overtime wages, or such lesser or greater amount as the facts as to the exact number of hours of overtime worked and exact rate of

15

overtime pay, dictate, together with an additional amount, equal to the amount of

overtime wages found due, as liquidated damages, for the value of wages and benefits

he has lost due to a retaliatory and wrongful termination and reasonable attorney's fees

and costs, all under the provisions of the Fair Labor Standards Act of 1938, as

amended, and such other legal and equitable relief as may be appropriate to effectuate

the purposes of the FLSA.

WHEREFORE, on Plaintiff's Third Cause of Action, for reasonable

attorney's fees and court costs.

DATED this 27 day of December, 2019.

_/s/ David J. Holdsworth_

David J. Holdsworth
*Attorney for Plaintiff*